**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:     (310) 819-3470

*Counsel for Plaintiffs City of Hialeah Employees'
Retirement System, Asbestos Workers Philadelphia
Welfare and Pension Fund, and Heat & Frost
Insulators Local 12 Funds*

[Additional counsel appear on signature page.]

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, ASBESTOS WORKERS PHILADELPHIA WELFARE AND PENSION FUND, and HEAT & FROST INSULATORS LOCAL 12 FUNDS, on behalf of themselves and all others similarly situated, | Case No. 3:23-cv-1697 |
| | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| Plaintiffs, | **CLASS ACTION** |
| v. | DEMAND FOR JURY TRIAL |
| GREG W. BECKER, DANIEL J. BECK, KAREN HON, ROGER F. DUNBAR, BEVERLY KAY MATTHEWS, ERIC A. BENHAMOU, ELIZABETH BURR, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVIS, JOEL P. FRIEDMAN, THOMAS KING, JEFFREY N. MAGGIONCALDA, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, , GOLDMAN SACHS & CO. LLC, BofA SECURITIES, INC., MORGAN STANLEY & CO. LLC, KEEFE, BRUYETTE & WOODS, INC., and KPMG, LLP, | |
| Defendants. | |

Plaintiffs City of Hialeah Employees' Retirement System ("Hialeah ERS"), Asbestos Workers Philadelphia Welfare and Pension Fund ("Asbestos Workers"), and Heat & Frost Insulators Local 12 Funds (the "Local 12 Funds") (collectively, "Plaintiffs"), by and through their counsel, allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, including the investigation of Plaintiffs' counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by SVB Financial Group ("SVB" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This securities class action is brought on behalf of a class of all persons and entities who purchased or otherwise acquired SVB securities between January 22, 2021, and March 10, 2023, inclusive (the "Class Period"), including all persons and entities who purchased SVB securities pursuant and/or traceable to the Company's following offerings of SVB securities (the "Offerings"):

| Offering Date | Security | Total Offering Value |
|---|---|---|
| January 26, 2021 | 1.800% Senior Notes due 2031 | $500,000,000 |
| January 26, 2021 | Depositary shares (representing a 1/100th ownership interest in a share of SVB Series B Non-Cumulative Perpetual Preferred Stock) | $750,000,000 |
| March 22, 2021 | Common Stock | $1,150,000,000 |
| May 6, 2021 | Depositary shares (representing a 1/100th ownership interest in a share of SVB Series C Non- | $1,000,000,000 |

| Offering Date | Security | Total Offering Value |
|---|---|---|
| | Cumulative Perpetual Preferred Stock) | |
| May 6, 2021 | 2.100% Senior Notes due 2028 | $500,000,000 |
| August 9, 2021 | Common Stock | $1,444,404,000 |
| October 25, 2021 | 1.800% Senior Notes due 2026 | $650,000,000 |
| October 25, 2021 | Depositary shares (representing a 1/100th ownership interest in a share of SVB Series D Non-Cumulative Perpetual Preferred Stock) | $1,000,000,000 |
| October 25, 2021 | Depositary shares (representing a 1/100th ownership interest in a share of SVB Series E Non-Cumulative Perpetual Preferred Stock) | $600,000,000 |
| April 26, 2022 | 4.345% Senior Fixed Rate/Floating Rate Notes due 2028 | $350,000,000 |
| April 26, 2022 | 4.570% Senior Fixed Rate/Floating Rate Notes due 2033 | $450,000,000 |

2.    This action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), against certain of SVB's executive officers, directors, auditors, and underwriters.

3.    SVB is a diversified financial services company.  As is relevant here, SVB is the parent company of Silicon Valley Bank (the "Bank"), a California state-chartered bank founded in 1983, which primarily provided banking and financial services in the technology and life science/healthcare industries as well as to global private equity ("PE") and venture capital ("VC") clients.  The Bank

provided its clients with, among other things, deposit account, credit (including secured and unsecured loans, lines of credit, and credit card programs), treasury management, foreign exchange, trade finance, and other financial products and services.  During the Class Period, SVB's common stock traded in the United States on the Nasdaq Global Select Market ("Nasdaq") under the ticker symbol "SIVB," and SVB's preferred stock traded on the Nasdaq under the ticker symbol "SIBP."

4.      On November 15, 2019, SVB filed a shelf registration statement on Form S-3 ASR (the "Shelf Registration Statement") authorizing the Company to "offer and sell from time to time any combination of the securities described in [the Shelf Registration Statement] in one or more offering."  During the Class Period, SVB issued prospectuses in connection with the Offerings on Forms 424B2 and 424B5, which incorporated the Shelf Registration Statement and formed part of the "Registration Statements."

5.      In the Registration Statements, other SEC filings, and multiple public statements throughout the Class Period, some or all Defendants misrepresented the strength of the Company's balance sheet, liquidity, and position in the market.  Among other things, the Defendants understated and concealed the magnitude of the risks facing the Company's business model that would result from any decision by the Federal Reserve System (the "Fed") raising the federal funds rate, thereby undermining the value of the Bank's securities portfolio and creating an environment in which the Bank's PE and VC clients (who typically increase investment activity in lower interest rate environments) would conduct less business with the Bank, including maintaining lower levels of deposits.

6.      Plaintiffs and other members of the Class began to learn the truth about the Company's precarious financial position, including the liquidity issues it was facing, through a series of disclosures beginning on July 21, 2022, when SVB announced disappointing second quarter 2022 financial results and slashed its 2022 financial guidance.  Among other things, SVB lowered its expected net interest income ("NII") growth to the mid-forties (down from its April 2022 guidance projecting growth in the low fifties).  The Officer Defendants (defined below) attributed the reduced

NII growth projection to several factors, including "unprecedented Fed tightening" and "meaningfully slowed PE and VC investment."

7.      In response to this news, the price of SVB common stock declined $74.81 per share, or more than 17%, from a close of $436.17 per share on July 21, 2022, to close at $361.36 per share on July 22, 2022.

8.      Investors continued to learn the truth about the liquidity pressure facing the Company on October 20, 2022, when SVB reported disappointing financial results for the third quarter of 2022 and further reduced its 2022 financial guidance.  Critically, SVB revealed that it now expected NII growth in the low forties (down from prior guidance projecting growth in the mid-forties), acknowledging that "the challenging [interest rate and PE/VC investment] environment is pressuring balance sheet and NII growth, and [the Company] expect[s] these conditions to persist for the foreseeable future until public markets stabilize."

9.      On this news, the price of SVB common stock fell $72.43 per share, or approximately 24%, from a close of $302.46 per share on October 20, 2022, to close at $230.03 per share on October 21, 2022.

10.      After the market closed on March 8, 2023, and less than two weeks after KPMG, LLP ("KPMG") signed off on the Company's 2022 annual report, investors were stunned when the Company announced that, due to "continued higher interest rates, pressured public and private markets, and elevated cash burn levels from [SVB's] clients," resulting in materially reduced levels of deposits by these clients, SVB was seeking to raise approximately $2.25 billion in capital (consisting of a $1.25 billion common stock public offering, a $500 million preferred stock public offering, and a $500 million private offering) to address its mushrooming liquidity issues.  In the same press release, SVB also revealed that it had sold "substantially all of its available for sale securities portfolio," taking an approximately $1.8 billion loss on the sale, in order to reinvest the assets to deliver higher returns."

11.      On this news, the price of SVB common stock declined $161.79 per share, or more than 60%, from a close of $267.83 per share on March 8, 2023, to close at $106.04 per share on March

9, 2023.  Similarly, the price of SVB preferred stock plummeted $4.27 per share, or more than 21%, from a close of $19.50 per share on March 8, 2023, to close at $15.23 per share on March 9, 2023.

12.     The Company's demise quickly followed these disclosures.  On March 9, 2023, the financial media reported that VC investor Peter Thiel was advising companies to pull money from Silicon Valley Bank due to concerns about the Company's financial stability, leading to a bank run. In response, on March 10, 2023, Nasdaq halted trading in the Company's stock, and the California Department of Financial Protection and Innovation closed Silicon Valley Bank and appointed the Federal Deposit Insurance Corporation as the Bank's receiver.

13.     On March 17, 2023, SVB filed for Chapter 11 bankruptcy protection, rendering all of its issued securities essentially valueless.

## II.     JURISDICTION AND VENUE

14.     Plaintiffs' claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.

15.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 22 of the Securities Act, 15 U.S.C. § 77v.

16.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1391(b), because SVB's principal executive offices are in Santa Clara, California, and because many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

17.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.   PARTIES AND RELEVANT NON-PARTIES

18.     Plaintiff Hialeah ERS is a benefit pension plan based in Hialeah, Florida, that provides pension services and benefits to employees, retirees, and beneficiaries of the City of Hialeah.  As set forth in the accompanying certification, incorporated by reference herein, Hialeah ERS purchased SVB securities at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

19.     Plaintiff Asbestos Workers is a multi-employer defined benefit union pension fund based in Philadelphia, Pennsylvania.  As set forth in the accompanying certification, incorporated by reference herein, Asbestos Worker purchased SVB securities at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

20.     Plaintiff the Local 12 Funds are employee benefit plans maintained for the purpose of providing health, welfare, retirement and other benefits to eligible participants and beneficiaries of the International Association of Heat and Frost Insulators and Allied Workers Local Union No. 12 of New York City.  As set forth in the accompanying certification, incorporated by reference herein, Asbestos Worker purchased SVB securities at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

21.     Defendant Greg W. Becker ("Becker") served as the Company's President and Chief Executive Officer throughout the Class Period.

22.     Defendant Daniel J. Beck ("Beck") served as the Company's Chief Financial Officer throughout the Class Period.

23.     Defendant Karen Hon ("Hon") served as the Company's Chief Accounting Officer throughout the Class Period.

24.     Defendants Becker, Beck, and Hon are collectively referred to herein as the "Officer Defendants."

25.     Defendant Roger F. Dunbar ("Dunbar") served as the Company's Chairman of the Board of Directors during the Class Period until April 21, 2022.

26.     Defendant Beverly Kay Matthews ("Matthews") served as a Company Director throughout the Class Period and as the Company's Chairman of the Board of Directors since April 21, 2022.

27.     Defendant Eric A. Benhamou ("Benhamou") served as a Company Director throughout the Class Period.

28.     Defendant Elizabeth Burr ("Burr") served as a Company Director during the Class Period since November 8, 2021.

29.     Defendant John S. Clendening ("Clendening") served as a Company Director during the Class Period until April 2022.

30.     Defendant Richard D. Daniels ("Daniels") served as a Company Director throughout the Class Period.

31.     Defendant Alison Davis ("Davis") served as a Company Director throughout the Class Period.

32.     Defendant Joel P. Friedman ("Friedman") served as a Company Director throughout the Class Period.

33.     Defendant Thomas King ("King") served as a Company Director during the Class Period since September 13, 2022.

34.     Defendant Jeffrey N. Maggioncalda ("Maggioncalda") served as a Company Director throughout the Class Period.

35.     Defendant Mary J. Miller ("Miller") served as a Company Director throughout the Class Period.

36.     Defendant Kate D. Mitchell ("Mitchell") served as a Company Director throughout the Class Period.

37.     Defendant John F. Robinson ("Robinson") served as a Company Director throughout the Class Period.

38.     Defendant Garen K. Staglin ("Staglin") served as a Company Director throughout the Class Period.

39.     Defendants Dunbar, Matthews, Benhamou, Burr, Clendening, Davis, Daniels, Friedman, King, Maggioncalda, Miller, Mitchell, Robinson, and Staglin are collectively referred to herein as the "Director Defendants."

40.     The Officer Defendants and the Director Defendants (other than Defendant King) signed certain of the Registration Statements and/or authorized their filing.

41.     The Officer Defendants and the Director Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SVB's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each of the Officer Defendants and the Director Defendants was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Officer Defendants and the Director Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

42.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for certain of SVB's Offerings during the Class Period.

43.     Defendant BofA Securities, Inc. ("BofA") served as an underwriter for certain of SVB's Offerings during the Class Period.

44.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for one of SVB's Offerings during the Class Period.

45.     Defendant Keefe, Bruyette & Woods, Inc. ("KBW") served as an underwriter for one of SVB's Offerings during the Class Period.

46.     Defendants Goldman Sachs, BofA, Morgan Stanley, and KBW are collectively referred to herein as the "Underwriter Defendants."

1    47.    Defendant KPMG, LLP is an international accounting firm organized under the laws

2    of the State of Delaware, with principal executive offices in New York, New York.  At all relevant

3    times, KPMG audited SVB's financial statements.

4    48.    The Officer Defendants, Director Defendants, Underwriter Defendants, and KPMG

5    are collectively referred to herein as "Defendants."

6    49.    Relevant Non-Party SVB is a Delaware corporation, with principle executive offices

7    in Santa Clara, California.  Relevant Non-Party SVB Securities LLC ("SVB Securities") f/k/a SVB

8    Leerink LLC, is an indirect, wholly-owned subsidiary of SVB, and served as an underwriter for

9    certain of SVB's Offerings.  On March 17, 2023, SVB filed for bankruptcy protection under Chapter

10   11 of the U.S. Bankruptcy Code.  For this reason, SVB and SVB Securities are not named as

11   defendants.

12   **IV.    SUBSTANTIVE ALLEGATIONS**

13        **A.    Defendants' False and Misleading Statements**

14   50.    The Class Period begins on January 22, 2021, to coincide with the Company's

15   announcement of its fourth quarter and full year 2020 financial results.  After the market closed on

16   January 21, 2021, SVB issued a press release and filed a Current Report on Form 8-K with the SEC.

17   In a letter accompanying the press release, Defendant Becker highlighted the Company's

18   "outstanding balance sheet growth driven by robust client liquidity and strong loan growth, with net

19   interest income above [the Company's] guidance" and assured investors that the Company

20   "maintain[s] strong capital and liquidity, supported by a high-quality balance sheet and robust

21   earnings power that position us well for long-term growth."

22   51.    On or about January 26, 2021, SVB issued a prospectus supplement on Form 424B2

23   to offer $500,000,000 in 1.800% Senior Notes due 2031, which incorporated and formed part of the

24   previously filed Shelf Registration Statement (together, the "2031 Senior Notes Registration

25   Statement").  That same day, SVB also issued a prospectus supplement on Form 424B2 to offer

26   750,000 depositary shares (each of which represents a 1/100th ownership interest in a share of SVB

27

28

Series B Non-Cumulative Perpetual Preferred Stock), which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "Series B Registration Statement").

52.    The 2031 Senior Notes Registration Statement and Series B Registration Statement contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For example, the 2031 Senior Notes Registration Statement and Series B Registration Statement understated and concealed the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity.

53.    On March 1, 2021, SVB filed its 2020 annual report on Form 10-K with the SEC (the "2020 Annual Report").  The 2020 Annual Report, which was signed by Officer Defendants Becker, Beck, and Hon, and Director Defendants Dunbar, Benhamou, Clendening, Daniels, Davis, Friedman, Maggioncalda, Matthews, Miller, Mitchell, Robinson, and Staglin, reported that, as of December 31, 2020, SVB had total assets of $115.5 billion and total deposits of $102.0 billion.

54.    In connection with SVB's financial results, the 2020 Annual Report explained that "[n]et interest income accounts for the major portion of [SVB's] earnings" and "is comprised primarily of income generated from interest rate spread differences between the interest rates received on interest-earning assets, such as loans extended to clients and securities held in [SVB's] fixed income securities portfolio, and the interest rates paid by [SVB] on interest-bearing liabilities, such as deposits and borrowings."  To this end, the 2020 Annual Report specifically highlighted the Company's "focus[] on . . . capital and liquidity," with "a liquid and high-quality balance sheet" and "access to other funding sources, as necessary."

55.    Critically, the 2020 Annual Report understated the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity. Instead of alerting investors to the liquidity pressure that the Company would face as these risks manifested, the 2020 Annual Report stated, only in general terms, that SVB's "interest rate spread has and may continue to decline in the future" and that "[a]ny material reduction in [SVB's] interest rate spread could have a material adverse effect on [SVB's] business, results of operations or financial

condition," that "[l]iquidity risk could impair [SVB's] ability to fund operations and jeopardize [SVB's] financial condition," and that "[c]hanges in the market for public equity offerings, M&A or a slowdown in private equity or venture capital investment levels may affect the needs of [SVB's] clients for investment banking or M&A advisory services and lending products, which could adversely affect [SVB's] business, results of operations or financial condition."

56.    As required by the Sarbanes-Oxley Act of 2002 ("SOX"), Defendants Becker and Beck certified that they had reviewed the 2020 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

57.    The 2020 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of SVB's 2019 and 2020 financials.  KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles."

58.    On or about March 22, 2021, SVB issued a prospectus supplement on Form 424B5 to offer 2,000,000 shares of common stock, which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "March 2021 Common Stock Registration Statement").

59.    The March 2021 Common Stock Registration Statement contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For example, the March 2021 Common Stock Registration Statement expressly incorporated by reference, among other things, the 2020 Annual Report, which understated and concealed the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity.

60.    On or about May 6, 2021, SVB issued a prospectus supplement on Form 424B2 to offer 1,000,000 depositary shares (each of which represents a 1/100th ownership interest in a share

of SVB Series C Non-Cumulative Perpetual Preferred Stock), which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "Series C Registration Statement"). That same day, SVB also issued a prospectus supplement on Form 424B2 to offer $500,000,000 in 2.100% Senior Notes due 2028, which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "2028 Senior Notes Registration Statement").

61.     The Series C Registration Statement and the 2028 Senior Notes Registration Statement contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For example, the Series C Registration Statement and the 2028 Senior Notes Registration Statement expressly incorporated by reference, among other things, the 2020 Annual Report, which understated and concealed the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity.

62.     On May 10, 2021, SVB filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial results for the first quarter of 2021 (the "Q1 2021 10-Q").  The Q1 2021 10-Q, which was signed by Defendants Beck and Hon, understated the significant financial and liquidity risks facing the Company, instead stating, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2020 Annual Report on Form 10-K."

63.     As required by SOX, Defendants Becker and Beck certified that they had reviewed the Q1 2021 10-Q and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

64.     On July 22, 2021, when the Company announced its second quarter 2021 financial results by issuing a press release and filing a Current Report on Form 8-K with the SEC, Defendant Becker addressed expected interest rate increases, assuring investors that the Company "remain[ed] ***well-positioned for rising rates***, with an asset-sensitive balance sheet, robust growth in [SVB's] NII-generating base, and substantial client liquidity off the balance sheet that will generate higher fee margins as short-term rates increase."  Becker also specifically emphasized that the Company "actively positioned [its] securities portfolio to create flexibility and mitigate the risk of rising long-

1  term rates through hedges, duration targeting and shifting the mix toward held-to-maturity
2  investments."

3       65.    During the Company's earnings conference call the same day, Defendant Becker
4  further explained that the Company would actually "***benefit significantly from increasing rates***"
5  through increases in NII and fee-based income.

6       66.    On August 6, 2021, SVB filed a quarterly report on Form 10-Q with the SEC, reporting
7  the Company's financial results for the second quarter of 2021 (the "Q2 2021 10-Q").  The Q2 2021
8  10-Q, which was signed by Defendants Beck and Hon, understated the significant financial and
9  liquidity risks facing the Company, instead stating, in pertinent part, "[t]here are no material changes
10 to the risk factors set forth in our 2020 Annual Report on Form 10-K."

11      67.    As required by SOX, Defendants Becker and Beck certified that they had reviewed
12 the Q2 2021 10-Q and that it "does not contain any untrue statement of a material fact or omit to state
13 a material fact necessary to make the statements made, in light of the circumstances under which such
14 statements were made, not misleading with respect to the period covered by this report."

15      68.    On or about August 9, 2021, SVB issued a prospectus supplement on Form 424B5 to
16 offer 2,227,000 shares of common stock, which incorporated and formed part of the previously filed
17 Shelf Registration Statement (together, the "August 2021 Common Stock Registration Statement").

18      69.    The August 2021 Common Stock Registration Statement contained untrue statements
19 of material fact and omitted material facts necessary to make the statements contained therein not
20 misleading.  For example, the August 2021 Common Stock Registration Statement expressly
21 incorporated by reference, among other things, the 2020 Annual Report, Q1 2021 10-Q, and Q2 2021
22 10-Q, which understated and concealed the risks posed to the Company by potential increases to
23 interest rates and any related reduction in client merger and acquisition activity and deposit levels.

24      70.    During the Company's October 21, 2021, third quarter 2021 earnings conference call,
25 Defendant Becker continued to signal a positive outlook, explaining "we're happy that we can
26 continue to grow NII in a low-rate environment, but we're even more bullish when we do start to see
27 some rate increases."

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:23-cv-1697                                                                 13

71.     On or about October 25, 2021, SVB issued a prospectus supplement on Form 424B2 to offer $650,000,000 in 1.800% Senior Notes due 2026, which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "2026 Senior Notes Registration Statement").  That same day, SVB also issued a prospectus supplement on Form 424B2 to offer 1,000,000 depositary shares (each of which represents a 1/100th ownership interest in a share of SVB Series D Non-Cumulative Perpetual Preferred Stock), which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "Series D Registration Statement"), and a prospectus supplement on Form 424B2 to offer 600,000 depositary shares (each of which represents a 1/100th ownership interest in a share of SVB Series E Non-Cumulative Perpetual Preferred Stock), which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "Series E Registration Statement").

72.     The 2026 Senior Notes Registration Statement, the Series D Registration Statement, and the Series E Registration Statement contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For example, the 2026 Senior Notes Registration Statement, the Series D Registration Statement, and the Series E Registration Statement expressly incorporated by reference, among other things, the 2020 Annual Report, Q1 2021 10-Q, and Q2 2021 10-Q, which understated and concealed the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity and deposit levels.

73.     On November 8, 2021, SVB filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial results for the third quarter of 2021 (the "Q3 2021 10-Q").  The Q3 2021 10-Q, which was signed by Defendants Beck and Hon, understated the significant financial and liquidity risks facing the Company, instead stating, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2020 Annual Report on Form 10-K."

74.     As required by SOX, Defendants Becker and Beck certified that they had reviewed the Q3 2021 10-Q and that it "does not contain any untrue statement of a material fact or omit to state

a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

75.    On January 20, 2022, when the Company announced its fourth quarter 2021 financial results by issuing a press release and filing a Current Report on Form 8-K with the SEC, Defendant Becker touted "the potential impact of future short-term interest rate increases, from which [SVB] would expect to see ***significant benefits***" including "approximately $100 to $130 million in incremental pre-tax net interest income annually for each 25-basis point increase in short-term rates" from the Company's "asset sensitive balance sheet," as well as the expectation that "[c]lient investment fees would increase by between $205 and $235 million on an annualized, pre-tax basis, with the first 25-basis point rate increase and by $20 to $50 million with each subsequent 25-basis point increase."

76.    During the Company's January 20, 2022 fourth quarter 2021 earnings conference call, Defendant Beck reiterated that the Company was "still bullish on liquidity."

77.    On March 1, 2022, SVB filed its 2021 annual report on Form 10-K with the SEC (the "2021 Annual Report"). The 2021 Annual Report, which was signed by Officer Defendants Becker, Beck, and Hon, and Director Defendants Dunbar, Benhamou, Burr, Clendening, Daniels, Davis, Friedman, Maggioncalda, Matthews, Miller, Mitchell, and Staglin, reported that, as of December 31, 2021, SVB had total assets of $211.5 billion and total deposits of $189.2 billion. SVB had effectively doubled in size in one year and had tripled in size since 2019 vastly multiplying the risks it faced from a changing interest rate environment.

78.    In connection with SVB's financial results, the 2021 Annual Report reiterated that "NII accounts for the major portion of [SVB's] earnings" and "is comprised primarily of income generated from interest rate spread differences between the interest rates received on interest-earning assets, such as loans extended to clients and securities held in [SVB's] fixed income securities portfolio, and the interest rates paid by [SVB] on interest-bearing liabilities, such as deposits and borrowings." To this end, the 2021 Annual Report explained that "[w]hen needed, [SVB's] liquidity is supplemented by wholesale borrowing capacity in the form of short- and long-term borrowings

secured by [SVB's] portfolio of high-quality investment securities, long-term capital market debt issuances and unsecured overnight funding channels available to [SVB] in the Federal Funds market."

79.    Like the 2020 Annual Report, the 2021 Annual Report, understated the risks posed to the Company.  Instead of alerting investors to the significant financial and liquidity pressures facing the Company from expected interest rate increases and slowing PE and VC investment, the 2021 Annual Report stated, only in general terms, that SVB's "interest rate spread has and may continue to decline in the future" and that "[a]ny material reduction in [SVB's] interest rate spread could have a material adverse effect on [SVB's] business, results of operations or financial condition," that "[l]iquidity risk could impair [SVB's] ability to fund operations and jeopardize [SVB's] financial condition," and that "[c]hanges in the market for public equity offerings, M&A or a slowdown in private equity or venture capital investment levels may affect the needs of [SVB's] clients for investment banking or M&A advisory services and lending products, which could adversely affect [SVB's] business, results of operations or financial condition."

80.    As required by SOX, Defendants Becker and Beck certified that they had reviewed the 2021 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

81.    The 2021 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of SVB's 2020 and 2021 financials.  KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2021 and 2020, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2021, in conformity with U.S. generally accepted accounting principles."

82.    Despite increasing concern about an eventual recession following the Fed's decision to start raising benchmark interest rates in March 2022, Defendants continued to assure investors that SVB's financial positioning was sound.  On April 21, 2022, when the Company announced its first quarter 2022 financial results by issuing a press release and filing a Current Report on Form 8-K with

the SEC, Defendant Becker explained that the Company had "raised [its] 2022 revenue outlook, as the March Fed Funds increase and higher interest rates overall accelerated net interest income and core fee income growth."  Becker further emphasized that "[w]hile rising rates benefit [SVB] from a revenue perspective, they also *highlight the effectiveness of [SVB's] proactive interest rate risk management.*"

83.     During the accompanying first quarter 2022 earnings conference call, Defendant Beck specifically highlighted that SVB had "lots of levers and good flexibility to be able to manage" the changing interest rate environment and "help from a liquidity perspective."

84.     Defendant Becker similarly downplayed the risk to the Company of a recession explaining:

> So I think the balance sheet is much different than it was in prior economic downturns.  The levers the finance team puts in place to protect the balance sheet, to protect net interest income, is better than it ever has been.  So will there be an impact?  Sure.  But it, certainly, in my view, is going to be more muted than it normally would be if you hit a recession 5, 10, 15 years ago.

85.     On or about April 26, 2022, SVB issued a prospectus supplement on Form 424B2 to offer $350,000,000 in 4.345% Senior Fixed Rate/Floating Rate Notes due 2028, and $450,000,000 in 4.570% Senior Fixed Rate/Floating Rate Notes due 2033, which incorporated and formed part of the previously filed Shelf Registration Statement (together, the "Fixed/Floating Registration Statement").

86.     The Fixed/Floating Registration Statement contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading. For example, the Fixed/Floating Registration Statement expressly incorporated by reference, among other things, the 2021 Annual Report, which understated and concealed the risks posed to the Company by potential increases to interest rates and any related reduction in client merger and acquisition activity and deposit levels.

87.     On May 6, 2022, SVB filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial results for the first quarter of 2022 (the "Q1 2022 10-Q").  Again understating the risks SVB faced, the Q1 2022 10-Q, which was signed by Defendants Beck and Hon,

stated in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K."

88.   As required by SOX, Defendants Becker and Beck certified that they had reviewed the Q1 2022 10-Q and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

89.   The above statements identified in paragraphs 50-88 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented the strength of the Company's balance sheet, liquidity, and position in the market, while also understating and concealing the substantial financial and liquidity pressure that the Company faced from increasing interest rates and the related reduction in its clients' merger and acquisition activity.  Among other things, Defendants never explained to investors the risks that SVB faced as a result of its investment decisions.  Despite having much more of its deposits uninsured, the Bank had far less cash as a percentage of deposits than its peers.  Further, the Bank had a much higher percentage of fixed rate assets, magnifying the Bank's exposure to changes in interest rates. As a result, any event impacting the Bank's perceived stability left it far more vulnerable to a potential bank run.

**B.**   **The Truth Begins to Emerge**

90.   Plaintiffs and the Class began to learn the truth about the Company's precarious financial position through a series of disclosures beginning on July 21, 2022, when SVB announced disappointing second quarter 2022 financial results and slashed its 2022 financial guidance in a press release and filed a Current Report on Form 8-K with the SEC.  Among other things, SVB lowered its expected NII growth to the mid-forties (down from its April 2022 guidance projecting growth in the low fifties).

91.   During the Company's earnings conference call that same day, Defendant Becker attributed the reduced NII growth projection to several factors, including slower PE and VC client investment and rising interest rates.  Specifically, Defendant Becker explained:

1

> We have unprecedented Fed tightening, record inflation, the persistence of COVID and geopolitical conflict have pressured public markets, and increased economic uncertainty. We've all seen that. This environment has nearly closed the IPO market, meaningfully slowed the pace of PE and VC investment, and revalued private companies.

92. In response to this news, the price of SVB common stock declined $74.81 per share, or more than 17%, from a close of $436.17 per share on July 21, 2022, to close at $361.36 per share on July 22, 2022.

93. Even after lowering the Company's NII guidance, Defendants continued to downplay the risks posed by increasing interest rates and slowed merger and acquisition activity. During the July 21, 2022, conference call, Defendant Becker reassured investors that the Company was "***stronger and better positioned than at any time in [its] history*** to support [its] clients as well" and "ha[s] a high-quality balance sheet with ample liquidity and strong capital."

94. On August 8, 2022, SVB filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial results for the second quarter of 2022 (the "Q2 2022 10-Q"). Rather than disclosing the multiple risks created by the rapidly changing interest rate environment, the Q2 2022 10-Q, which was signed by Defendants Beck and Hon, stated in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K."

95. As required by SOX, Defendants Becker and Beck certified that they had reviewed the Q2 2022 10-Q and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

96. The above statements identified in paragraphs 93-95 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants misrepresented the strength of the Company's balance sheet, liquidity, and position in the market, while also understating and concealing the substantial financial and liquidity pressure that the Company faced from increasing interest rates and the related reduction in its clients' merger and acquisition activity.

97.     Investors continued to learn the truth about the liquidity pressure facing the Company on October 20, 2022, when SVB issued a press release and filed a Current Report on Form 8-K with the SEC reporting disappointing financial results for the third quarter of 2022, and further reduced its 2022 financial guidance.  Critically, SVB revealed that it now expected NII growth in the low forties (down from prior guidance projecting growth in the mid-forties).  Defendant Becker acknowledged that "the challenging [interest rate and PE/VC investment] environment is pressuring balance sheet and NII growth, and [the Company] expect[s] these conditions to persist for the foreseeable future until public markets stabilize."

98.     On this news, the price of SVB common stock fell $72.43 per share, or approximately 24%, from a close of $302.46 per share on October 20, 2022, to close at $230.03 per share on October 21, 2022.

99.     Despite this further reduction to the Company's financial guidance, the Defendants once again continued to tout the strength and liquidity of the Company's balance sheet and claimed that SVB was positioned for long-term strength.  During the Company's earnings conference call that same day, Defendant Becker further assured investors that "[w]e continue to see strength and momentum in [SVB's] underlying business."  Defendant Becker also reiterated that SVB was "well equipped to manage these conditions," specifically highlighting "a strong liquid balance sheet with healthy levels of capital, recession-tested management, [and] a resilient client base."  Likewise, Defendant Beck characterized the Company's balance sheet as "highly flexible, [with] a lot of options associated with it."

100.    When SVB filed a quarterly report on Form 10-Q with the SEC reporting the Company's financial results for the third quarter of 2022 (the "Q3 2022 10-Q") on November 7, 2022, the Q3 2022 10-Q, which was signed by Defendants Beck and Hon, once again stated, in pertinent part, "[t]here are no material changes to the risk factors set forth in our 2021 Annual Report on Form 10-K."

101.    As required by SOX, Defendants Becker and Beck certified that they had reviewed the Q3 2022 10-Q and that it "does not contain any untrue statement of a material fact or omit to state

a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

102.    Defendants continued to downplay and conceal the Company's exposure to substantial liquidity risks in the opening months of 2023.  For example, on January 19, 2023, when the Company announced its fourth quarter 2022 financial results by issuing a press release and filing a Current Report on Form 8-K with the SEC, Defendant Becker again claimed that the Company "remain[ed] well positioned with a strong balance sheet and the resources and expertise to manage successfully and serve [its] clients through the current environment" and touted the fact that SVB "ha[s] a high-quality, liquid balance sheet; strong capital ratios; and multiple levers to manage liquidity."

103.    Similarly, during the Company's fourth quarter 2022 earnings conference call with investors that day, Defendant Becker insisted that the Company was well-situated to face "[g]lobal market volatility [that] has significantly reduced private and public investment" and "uncertainty over the direction of rates and inflation in the broader economy."

104.    Specifically, Defendant Becker assured investors that the Company was "prepared if those things don't improve, again, which is important" and that "even if the market challenges are prolonged or get worse, it's important to note [SVB] ha[s] a high-quality, very liquid balance sheet . . . strong capital levels; a seasoned management team, which we experienced navigating challenging markets; and adding a lot of new people with deep experience as well; and a consistent focus on [SVB's] long-term business strategy."  In fact, Defendant Becker signaled an improved outlook for the Company, explaining, "we feel clearly better about the outlook than we did last quarter" and pointing to "ample resources of liquidity and other ways to make sure we're taking care of [SVB's] clients and still being there for them when they need it."

105.    Then, on February 24, 2023, the Company filed its 2022 annual report on Form 10-K with the SEC (the "2022 Annual Report").  The 2022 Annual Report, which was signed by Officer Defendants Becker, Beck, and Hon, and Director Defendants Matthews, Benhamou, Burr, Daniels, Davis, Friedman, King, Maggioncalda, Miller, Mitchell, and Staglin, reported that, as of December 31, 2022, SVB had total assets of $211.8 billion and total deposits of $173.1 billion.

106.   In connection with SVB's financial results, the 2022 Annual Report reiterated that "NII accounts for the major portion of [SVB's] earnings" and "is comprised primarily of income generated from interest rate spread differences between the interest rates received on interest-earning assets, such as loans extended to clients and securities held in [SVB's] fixed income securities portfolio, and the interest rates paid by [SVB] on interest-bearing liabilities, such as deposits and borrowings." To this end, the 2022 Annual Report explained that "[w]hen needed, [SVB's] liquidity is supplemented by wholesale borrowing capacity in the form of short– and long-term borrowings secured by [SVB's] portfolio of high-quality investment securities, long-term capital market debt issuances and unsecured overnight funding channels available to [SVB] in the Federal Funds market."

107.   The 2022 Annual Report understated the risks posed to the Company by not disclosing that interest rate hikes by the Fed and slowed PE and VC activity were causing irrevocable damage to the Company. Instead of disclosing these risks, the 2022 Annual Report stated, only in general terms, that SVB's "interest rate spread may decline further in the future," that "[a]ny material reduction in [SVB's] interest rate spread could have a material adverse effect on [SVB's] business, results of operations or financial condition," that "[l]iquidity risk could impair [SVB's] ability to fund operations and jeopardize [SVB's] financial condition," and that "[c]hanges in the market for public equity offerings, M&A or a slowdown in private equity or venture capital investment levels have affected and may continue to affect the needs of [SVB's] clients for investment banking or M&A advisory services and lending products, which could adversely affect [SVB's] business, results of operations or financial condition."

108.   As required by SOX, Defendants Becker and Beck certified that they had reviewed the 2022 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

109.   The 2022 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of SVB's 2021 and 2022 financials. KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the

financial position of the Company as of December 31, 2021 and 2022, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2022, in conformity with U.S. generally accepted accounting principles." Even though SVB's deposits began to decline in 2022, falling $25 billion during the final nine months of 2022 and reducing SVB's liquidity, KPMG did not identify risks associated with SVB's declining deposits or SVB's ability to hold debt securities to maturity in its report. Additionally, KPMG's audit report was silent as to whether—pursuant to Public Company Accounting Oversight Board AS 2415—there was "substantial doubt about [SVB's] ability to continue as a going concern for a reasonable period of time."

110.   On March 3, 2023, just days after the Officer Defendants (but not investors) learned that Moody's Investors Service Inc. planned to downgrade SVB's credit in response to the declining value of the Company's bond holdings, SVB filed a Proxy Statement with the SEC assuring investors that the Company "effectively leveraged [its] flexible liquidity strategy to sustain overall healthy client fund levels, despite balance sheet pressures from declining deposits, elevated client cash burn, and overall market environment challenges."

111.   The above statements identified in paragraphs 99-110 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants misrepresented the strength of the Company's balance sheet, liquidity, and position in the market, while also understating and concealing the substantial financial and liquidity pressure that the Company faced from increasing interest rates and the related reduction in its clients' merger and acquisition activity.

112.   Notwithstanding Defendants' repeated assurances that the Company had flexible liquidity and could effectively manage its business through a rising interest rate environment, after the market closed on March 8, 2023, SVB stunned investors when it issued a press release and filed a Current Report on Form 8-K with the SEC, announcing that, due to "continued higher interest rates, pressured public and private markets, and elevated cash burn levels from [SVB's] clients," SVB was seeking to raise approximately $2.25 billion in capital (consisting of a $1.25 billion common stock

public offering, a $500 million preferred stock public offering, and a $500 million private offering). In the same press release, SVB also revealed that it had sold "substantially all of its available for sale securities portfolio," taking an approximately $1.8 billion loss on the sale, in order to reinvest the assets to deliver higher returns."

113.    On this news, the price of SVB common stock declined $161.79 per share, or more than 60%, from a close of $267.83 per share on March 8, 2023, to close at $106.04 per share on March 9, 2023.  Similarly, the price of SVB preferred stock plummeted $4.27 per share, or more than 21%, from a close of $19.50 per share on March 8, 2023, to close at $15.23 per share on March 9, 2023.

114.    On March 9, 2023, the financial media reported that VC investor Peter Thiel was advising companies to pull money from Silicon Valley Bank due to concerns about the Company's financial stability, leading to a bank run.  SVB lost nearly $40 billion in deposits on March 9, 2023 and informed regulators that it expected to lose an equivalent amount the next day.  In response, on March 10, 2023, Nasdaq halted trading in the Company's stock and the California Department of Financial Protection and Innovation closed the Bank and appointed the Federal Deposit Insurance Corporation as the Bank's receiver.

115.    Following the halt of trading, various revelations about SVB's deficient risk controls began to come to light.  For example, on March 10, 2023, *Fortune* reported that the Bank did not have a Chief Risk Officer during an 8-month period from 2022 to 2023—a period of "difficult transition in the venture capital market" due to rising interest rates and slowed VC dealmaking.

116.    Then, on March 14, 2023, *The Wall Street Journal* reported that the U.S. Department of Justice ("DOJ") and the SEC had each opened investigations into the Bank's collapse.  According to the report, the investigations were also looking into stock sales that SVB's executive officers made mere days before the Bank collapsed—with Defendant Becker selling approximately $3 million worth of shares on February 27, 2023, and Defendant Beck selling approximately $575,000 worth of shares on February 27, 2023.

117.    On March 17, 2023, SVB filed for Chapter 11 bankruptcy protection.

118.    Two days later, on March 19, 2023, *The New York Times* revealed that the Federal Reserve Bank of San Francisco (the "San Francisco Fed") had been aware of SVB's risky practices for more than a year and had "***repeatedly warned*** the bank that it had problems."  Specifically, *The New York Times* reported that the San Francisco Fed's 2021 review of the Bank resulted in six citations to the Bank, "flagg[ing] that the firm was doing a bad job of ensuring that it would have enough easy-to-tap cash on hand in the event of trouble" and eventually concluding after a July 2022 full supervisory review that the Bank's governance and controls were deficient.  According to *The New York Times*, the San Francisco Fed had met with senior leaders at the Bank to discuss the Bank's "ability to gain access to enough cash in a crisis and possible exposure to losses as interest rates rose." *The New York Times* further reported that "[i]t became clear to the Fed that the [Bank] was using bad models to determine how its business would fare as the central bank raised rates: Its leaders were assuming that higher interest revenue would substantially help their financial situation as rates went up, but that was out of step with reality."

119.    Then, on March 21, 2023, *Bloomberg* reported that "[l]oans to officers, directors and principal shareholders [of SVB], and their related interests, more than tripled from the third quarter last year to $219 million in the final three months of 2022."  According to *Bloomberg*, the volume of lending to insiders was "a record dollar amount . . . going back at least two decades" and "[t]he surge in loans to high-up figures may draw scrutiny as the Federal Reserve and Congress investigate the breakdown of Silicon Valley Bank."

120.    On April 2, 2023, *The Washington Post* reported that SVB executives were personally aware, as early as 2020, that SVB's investment strategies violated its own risk metrics and exposed the Bank to substantial issues in the event of higher interest rates, yet disregarded these concerns in order to continue reporting more substantial growth.  Specifically, according to *The Washington Post*, SVB had "fallen out of compliance with a key risk metric" by "buying long-term investments that paid more interest," as an "internal model showed that higher interest rates could have a devastating impact on the bank's future earnings."  However, rather than acting to reduce the Company's risk,

executives—including Defendant Beck—"simply changed the model's assumptions" so that it would incorrectly predict that rising interest rates would have little impact on SVB.

## V.     PLAINTIFFS' CLASS ACTION ALLEGATIONS

121.    Plaintiffs bring this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased or otherwise acquired SVB securities during the Class Period, including all persons and entities who purchased SVB securities pursuant and/or traceable to the Offerings (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of SVB, and their families and affiliates.

122.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

123.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.   Whether the Company (which, as previously noted, is not named as a Defendant), the Officer Defendants, the Director Defendants, and KPMG violated the Exchange Act;

    b.   Whether the Officer Defendants, the Director Defendants (Except Defendant King), and the Underwriter Defendants violated the Securities Act;

    c.   Whether the Registration Statements were negligently prepared and contained inaccurate statements of material fact, omitted other facts necessary to make the statements made therein not misleading, and omitted material information required to be stated therein;

    d.   Whether Defendants omitted and/or misrepresented material facts;

    e.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

f.   Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

g.   Whether the prices of SVB securities were artificially inflated during the Class Period; and

h.   The extent of damage sustained by members of the Class and the appropriate measure of damages.

124.   Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

125.   Plaintiffs will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiffs have no interests that conflict with those of the Class.

126.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## VI.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE MARKET DOCTRINE

127.   Plaintiffs will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.   The omissions and misrepresentations were material;

c.   The Company's securities traded in an efficient market;

d.   The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e.   Plaintiff sand the Class purchased SVB securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

128.    At all relevant times, the market for the Company's securities was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

**VII.    NO SAFE HARBOR**

129.    Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

130.    Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

**VIII.    LOSS CAUSATION/ECONOMIC LOSS**

131.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiffs and the Class.  The prices of SVB securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of SVB securities during the Class Period, Plaintiffs and the Class suffered economic loss, i.e., damages, under the federal securities laws.

IX.     **ADDITIONAL SCIENTER ALLEGATIONS**

132.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  As reveled by *The New York Times* and other publications, Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of SVB securities during the Class Period.

X.      **CLAIMS AGAINST DEFENDANTS**

**COUNT I**

**Violations of Section 10(b) of the Exchange Act and**

**SEC Rule 10b-5 Promulgated Thereunder**

**Against the Officer Defendants, the Director Defendants, and KPMG**

133.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

134.    During the Class Period, the Defendants named in this Count carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and the Class; and (2) cause Plaintiffs and the Class to purchase Company securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants named in this Count took the actions set forth herein.

135.    The Defendants named in this Count: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

136.    As a direct and proximate result of the wrongful conduct of the Defendants named in this Count, Plaintiffs and the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**Violations of Section 20(a) of the Exchange Act**

**Against the Officer Defendants and Director Defendants**

137.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

138.     The Officer Defendants and Director Defendants acted as controlling persons of SVB within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Officer Defendants and Director Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Officer Defendants and Director Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

139.     In particular, each of the Officer Defendants and Director Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

140.     As described above, the Company and the Officer Defendants and Director Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Officer Defendants and Director Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of Company securities during the Class Period.

**COUNT III**

**Violations of Section 11 of the Securities Act**

**Against the Officer Defendants, the Director Defendants (Except Defendant King),**

**and the Underwriter Defendants**

141.     Plaintiffs incorporates by reference the allegations in the preceding paragraphs.

142.     This Count is brought on behalf of all members of the Class who purchased or otherwise acquired SVB securities pursuant and/or traceable to the Offerings.

143.     This Count express excludes and disclaims any allegation that could be construed as alleging fraud, or intentional or reckless conduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that the Defendants named in this Count acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

144.     SVB is the registrant of the Offerings.  The defendants named in this Count were responsible for the contents and dissemination of the Registration Statements.

145.     The Registration Statements were false and misleading, contained untrue statements of material facts, and omitted other facts necessary to make the statements not misleading.

146.     Liability under this Count is predicated on the Officer Defendants and Director Defendants (except Defendant King) having signed or authorized the signing of the Registration Statements, and the respective participation by all Defendants named in this Count in the Offerings, which were conducted pursuant to the Registration Statements.

147.     Plaintiffs and the Class have suffered damages as the value of SVB securities sold pursuant to the Offerings has declined substantially as a result of the violations of the Defendants named in this Count.

148.     By reason of the conduct alleged herein, each defendant named in this Count violated Section 11 of the Securities Act and are each jointly and severally liable to Plaintiffs and other members of the Class who purchased SVB securities pursuant and/or traceable to the Offerings.

# COUNT IV

## Violations of Section 12(a) of the Securities Act

## Against the Underwriter Defendants

149.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

150.    This Count is brought on behalf of all members of the Class who purchased or otherwise acquired SVB securities pursuant and/or traceable to the Offerings.

151.    This Count express excludes and disclaims any allegation that could be construed as alleging fraud, or intentional or reckless conduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs do not allege that the Underwriter Defendants acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

152.    The Underwriter Defendants were statutory sellers of SVB securities that were registered in the Offerings pursuant to the Registration Statements.  By means of the Registration Statements, the Underwriter Defendants sold billions of dollars of SVB securities to members of the Class.  The Underwriter Defendants were at all relevant times motivated by their own financial interests.  In sum, the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the SVB securities sold in the Offerings by means of the materially false and misleading Registration Statements.

153.    The Registration Statements were false and misleading, contained untrue statements of material facts, and omitted other facts necessary to make the statements not misleading.

154.    Plaintiffs and the Class have suffered damages as the value of SVB securities sold pursuant to the Offerings has declined substantially as a result of the violations of the Underwriter Defendants.

155.    By reason of the conduct alleged herein, each Underwriter Defendant violated Section 12(a)(2) of the Securities Act and are liable to Plaintiffs and other members of the Class who purchased SVB securities pursuant and/or traceable to the Offerings.

1

**COUNT V**

2

**Violations of Section 15 of the Securities Act**

3

**Against the Officer Defendants and Director Defendants (Except Defendant King)**

4

156.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

5

157.    This Count is brought on behalf of all members of the Class who purchased or

6

otherwise acquired SVB securities pursuant and/or traceable to the Offerings.

7

158.    This Count express excludes and disclaims any allegation that could be construed as

8

alleging fraud, or intentional or reckless conduct, as this Count is based solely on claims of strict

9

liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiffs

10

do not allege that the Defendants named in this Count acted with scienter or fraudulent intent, which

11

are not elements of a Section 15 claim.

12

159.    The Officer Defendants and Director Defendants (except Defendant King) acted as

13

controlling persons of SVB within the meaning of Section 15 of the Securities Act.  By virtue of their

14

high-level positions, and their ownership and contractual rights, participation in and/or awareness of

15

the Company's operations, and/or intimate knowledge of the false financial statements filed by the

16

Company with the SEC and disseminated to the investing public, the Officer Defendants and Director

17

Defendants had the power to influence and control—and did influence and control, directly or

18

indirectly—the decision-making of the Company, including the content and dissemination of the

19

Registration Statements.

20

160.    By reason of the conduct alleged herein, each defendant named in this Count violated

21

Section 15 of the Securities Act and are liable to Plaintiffs and other members of the Class who

22

purchased SVB securities pursuant and/or traceable to the Offerings.

23

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

24

a.    Determining that this action is a proper class action under Rule 23 of the

25

Federal Rules of Civil Procedure;

26

b.    Awarding compensatory damages and equitable relief in favor of Plaintiffs and

27

other members of the Class against all Defendants, jointly and severally, for

28

1       all damages sustained as a result of Defendants' wrongdoing, in an amount to

2       be proven at trial, including interest thereon;

3           c.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred

4               in this action, including counsel fees and expert fees; and

5           d.      Such other and further relief as the Court may deem just and proper.

6   **XI.     <u>DEMAND FOR JURY TRIAL</u>**

7       Plaintiffs hereby demand a trial by jury.

8    DATED:  April 7, 2023                   Respectfully submitted,

9                                            **BERNSTEIN LITOWITZ BERGER**
                                               **& GROSSMANN LLP**
10

11                                           */s/ Jonathan D. Uslaner*
                                             JONATHAN D. USLANER (Bar No. 256898)
12                                           (jonathanu@blbglaw.com)
                                             2121 Avenue of the Stars, Suite 2575
13                                           Los Angeles, CA 90067
                                             Tel:    (310) 819-3470
14
                                             -and-
15
                                             GERALD H. SILK
16                                           (jerry@blbglaw.com)
                                             HANNAH ROSS
17                                           (hannah@blbglaw.com)
                                             JEROEN VAN KWAWEGEN
18                                           (jeroen@blbglaw.com)
                                             AVI JOSEFSON
19                                           (avi@blbglaw.com)
                                              SCOTT R. FOGLIETTA
20                                           (scott.foglietta@blbglaw.com)
                                             1251 Avenue of the Americas
21                                           New York, NY 10020
                                             Tel:    (212) 554-1400
22                                           Fax:    (212) 554-1444

23                                           *Counsel for Plaintiffs City of Hialeah Employees'*
                                             *Retirement System, Asbestos Workers Philadelphia*
24                                           *Welfare and Pension Fund, and Heat & Frost*
                                             *Insulators Local 12 Funds*

25

26

27

28

---

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:23-cv-1697                                                          34

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Robert Williams III, on behalf of City of Hialeah Employees' Retirement System ("Hialeah ERS"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I am the Chairman of Hialeah ERS.  I have reviewed the complaint with Hialeah ERS's legal counsel.  Based on legal counsel's knowledge and advice, Hialeah ERS has authorized the filing of the complaint.

2.  Hialeah ERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.  Hialeah ERS is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Hialeah ERS's transactions in the SVB Financial Group securities that are the subject of this action are set forth in the chart attached hereto.

5.  Hialeah ERS has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

    *Ryan v. FIGS, Inc.*, No. 22-cv-7939 (C.D. Cal.)
    *City of North Miami Beach Police Officers' and Firefighters' Retirement Plan v. Barclays PLC*, No. 22-cv-8172 (S.D.N.Y.)
    *City of Hialeah Employees' Retirement System v. Peloton Interactive, Inc.*, No. 21-cv-9582 (S.D.N.Y.)
    *City of Hialeah Employees' Retirement System v. Grand Canyon Education, Inc.*, No. 20-cv-639 (D. Del.)

6.  Hialeah ERS will not accept any payment for serving as a representative party on behalf of the Class beyond Hialeah ERS's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this __6__ day of April, 2023.

Robert Williams III
Chairman
*City of Hialeah Employees' Retirement System*

**City of Hialeah Employees' Retirement System**
**Transactions in SVB Financial Group**

Cusip# 78486Q101
Common Stock

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 3/19/2021 | 20 | 544.6100 |
| Purchase | 6/18/2021 | 40 | 530.9600 |
| Merger receipt | 7/6/2021 | 86 | |
| Purchase | 9/16/2021 | 60 | 608.4500 |
| Purchase | 4/1/2022 | 155 | 544.8439 |
| Purchase | 4/4/2022 | 31 | 542.6196 |
| Purchase | 4/4/2022 | 88 | 545.9174 |
| Purchase | 4/5/2022 | 95 | 542.0360 |
| Purchase | 4/5/2022 | 199 | 535.6747 |
| Purchase | 4/6/2022 | 185 | 519.1949 |
| Purchase | 4/11/2022 | 75 | 516.2816 |
| Purchase | 4/11/2022 | 102 | 515.4688 |
| Purchase | 4/12/2022 | 50 | 517.2449 |
| Purchase | 4/14/2022 | 209 | 518.9539 |
| Purchase | 6/24/2022 | 355 | 415.5200 |
| Purchase | 10/21/2022 | 10 | 241.2800 |
| | | | |
| Sale | 6/22/2021 | (177) | 559.7586 |
| Sale | 7/6/2021 | (85) | 550.0100 |
| Fractional sale | 7/9/2021 | (1) | 568.9800 |
| Sale | 10/20/2021 | (116) | 699.3891 |
| Sale | 10/20/2021 | (470) | 699.3891 |
| Sale | 11/1/2021 | (112) | 727.5383 |
| Sale | 8/11/2022 | (199) | 456.6503 |
| Sale | 10/28/2022 | (306) | 233.9855 |
| Sale | 10/31/2022 | (126) | 229.9425 |
| Sale | 10/31/2022 | (160) | 231.7938 |
| Sale | 11/1/2022 | (216) | 229.3465 |
| Sale | 11/2/2022 | (381) | 222.4100 |
| Sale | 2/28/2023 | (70) | 288.1100 |
| Sale | 3/1/2023 | (280) | 281.3164 |
| Sale | 3/9/2023 | (1,010) | 117.8191 |
| Sale | 3/9/2023 | (2,697) | 117.8191 |

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Michael E. Burns, on behalf of Asbestos Workers Philadelphia Welfare and Pension Fund ("Asbestos Workers"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Administrator of Asbestos Workers. I have reviewed the complaint and authorize its filing.

2. Asbestos Workers did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Asbestos Workers is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Asbestos Workers' transactions in the SVB Financial Group securities that are the subject of this action are set forth in the chart attached hereto.

5. Asbestos Workers is currently serving as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Joyce v. Amazon.com, Inc.*, No. 22-cv-617 (W.D. Wash.)

6. Asbestos Workers will not accept any payment for serving as a representative party on behalf of the Class beyond Asbestos Workers' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of April, 2023.

Michael E. Burns
Administrator
*Asbestos Workers Philadelphia Welfare and
Pension Fund*

**Asbestos Workers Philadelphia Welfare and Pension Fund
Transactions in SVB Financial Group**

Cusip# 78486Q101
Common Stock

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 2/8/2021 | 528 | 503.0023 |
| Sale | 4/1/2021 | (252) | 481.4436 |
| Sale | 5/7/2021 | (276) | 585.9089 |

Cusip# 78486QAQ4
4.7% Fixed-to-Reset Series E Non-Cumulative Perpetual Preferred Stock

| <u>Transaction</u> | <u>Date</u> | <u>Face Amount</u> | <u>Par Value</u> |
|---|---|---|---|
| Purchase | 10/25/2021 | 75,000 | 100.000 |
| Sale | 3/10/2023 | (35,000) | 8.000 |
| Sale | 3/10/2023 | (20,000) | 30.000 |
| Sale | 3/10/2023 | (20,000) | 18.000 |

## CERTIFICATION PURSUANT TO
## <u>THE FEDERAL SECURITIES LAWS</u>

       I, John Jovic, on behalf of Heat & Frost Insulators Local 12 Funds (the "Local 12 Funds"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I am the Business Manager of the Local 12 Funds.  I have reviewed the complaint and authorize its filing.

2.  The Local 12 Funds did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.  The Local 12 Funds are willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  The Local 12 Funds' transactions in the SVB Financial Group securities that are the subject of this action are set forth in the chart attached hereto.

5.  The Local 12 Funds have not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6.  The Local 12 Funds will not accept any payment for serving as a representative party on behalf of the Class beyond the Local 12 Funds' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

       I declare under penalty of perjury that the foregoing is true and correct.  Executed this ___ day of April, 2023.

<br>

DocuSigned by:

C01FCE9F4EC74D0

John Jovic
Business Manager
*Heat & Frost Insulators Local 12 Funds*

**Heat & Frost Insulators Local 12 Funds**
**Transactions in SVB Financial Group**

Cusip# 78486Q101
Common Stock

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 5/18/2021 | 600 | 582.4481 |
| Purchase | 8/17/2021 | 95 | 565.4094 |
| Purchase | 8/18/2021 | 54 | 565.9306 |
| Purchase | 8/26/2021 | 9 | 568.6800 |
| Purchase | 11/1/2021 | 14 | 728.2500 |
| Sale | 9/14/2021 | (141) | 584.4400 |
| Sale | 11/18/2021 | (108) | 746.6909 |
| Sale | 11/19/2021 | (523) | 730.1021 |

Cusip# 78486QAP6
4.25% Fixed-to-Reset Series D Non-Cumulative Perpetual Preferred Stock

| Transaction | Date | Face Amount | Par Value |
|---|---|---|---|
| Purchase | 10/27/2021 | 35,000 | 100.0000 |
| Purchase | 2/25/2022 | 30,000 | 96.5000 |
| Purchase | 8/15/2022 | 5,000 | 84.4800 |
| Sale | 3/10/2023 | (70,000) | 3.0000 |

Cusip# 78486QAJ0
4% Fixed-to-Reset Series C Non-Cumulative Perpetual Preferred Stock

| Transaction | Date | Face Amount | Par Value |
|---|---|---|---|
| Purchase | 5/6/2021 | 50,000 | 100.0000 |
| Purchase | 5/21/2021 | 15,000 | 100.0000 |
| Sale | 3/10/2023 | (15,000) | 7.2500 |

Cusip# 78486QAG6

4.1% Fixed-to-Reset Series B Non-Cumulative Perpetual Preferred Stock

| **Transaction** | **Date** | **Face Amount** | **Par Value** |
|---|---|---|---|
| Purchase | 1/26/2021 | 30,000 | 100.0000 |
| Purchase | 4/1/2021 | 45,000 | 100.0000 |
| Purchase | 7/9/2021 | 15,000 | 100.0000 |
| Purchase | 8/15/2022 | 5,000 | 79.3750 |
| | | | |
| Sale | 5/21/2021 | (15,000) | 99.5000 |
| Sale | 2/25/2022 | (20,000) | 89.9470 |
| Sale | 3/10/2023 | (15,000) | 24.5000 |
| Sale | 3/10/2023 | (45,000) | 3.0000 |

Cusip# 78486QAS0

4.570% Senior Fixed Rate/Floating Rate Notes, 04/29/33 maturity

| **Transaction** | **Date** | **Face Amount** | **Par Value** |
|---|---|---|---|
| Purchase | 4/26/2022 | 55,000 | 100.0000 |
| | | | |
| Sale | 12/9/2022 | (55,000) | 90.0640 |